IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| ANDREA ARMSTRONG, as Executrix of the Estate of GLENN FORD, | ) ) ) ) Case No. 5:15-cv-544 |
| Plaintiff, | ) Hon. S. Maurice Hicks, ) District Judge ) |
| v. | ) Hon. Karen L. Hayes, ) Magistrate Judge |
| CITY OF SHREVEPORT, *et al.* | ) ) JURY TRIAL DEMANDED |
| Defendants. | ) |

## PLAINTIFF'S COMBINED RESPONSE TO DEFENDANTS' MOTIONS TO STAY

Plaintiff ANDREA ARMSTRONG, as Executrix of the Estate of GLENN FORD, by her attorneys, responds to the Motion to Stay Discovery (Dckt. 136) filed by Defendants CADDO PARISH; the ESTATE OF GEORGE MCCORMICK; JAMES STEWART, in his official capacity as district attorney for Caddo Parish; PAUL CARMOUCHE, in his official capacity as the former district attorney for Caddo Parish; and CHARLES R. SCOTT (collectively "Parish Defendants") and the Motion to Stay Discovery (Dckt. 137) filed by DON ASHLEY, GARY ALDERMAN, GARY PITTMAN, EVERETT T. RUSHING, BILLY LOCKWOOD, FRANK DATCHER, GLYNN MITCHELL, RODNEY PRICE, and the CITY OF SHREVEPORT (collectively "Law Enforcement Defendants") as follows:

### INTRODUCTION

This case stems from Glenn Ford's wrongful conviction and imprisonment on death row in solitary confinement for almost thirty years—half of his life—for a

1

murder the State of Louisiana admits he did not commit. Dckt. 86, ¶¶1-3. In June 2015, just months after his exoneration and release from prison, Mr. Ford died of cancer. Dckt. 77.

This case involves facts that go back thirty years. Dckt. 86, ¶¶25-84. Plaintiff alleges and details in his Complaint a series of improper law enforcement actions that framed him for murder in 1983. *Id.* To be clear, no physical evidence ever connected Mr. Ford to the 1983 killing. In fact, all of the evidence available to authorities at the time of the crime showed that Mr. Ford was not involved, but that the real killers were violent offenders known to police. *Id.*

Mr. Ford was wrongly arrested, prosecuted, and convicted of murder. Mr. Ford's wrongful conviction was based on false evidence fabricated by the Defendants for use in Mr. Ford's criminal trial. *Id.* At the same time, the Defendants suppressed and destroyed evidence that would have proven Mr. Ford innocent. *Id.*

Plaintiff Andrea Armstrong, Executrix of Mr. Ford's Estate, brings this suit to vindicate Mr. Ford's constitutional rights and to redress the loss of liberty and terrible hardship that the Defendants have caused. In fact, Mr. Ford originally filed this lawsuit more than a year ago, a few months before he died. Mr. Ford died before he could see his claims against Defendants come to fruition.

In order to ensure justice, Plaintiff should be allowed to begin discovery now. Witnesses and parties are aging. Every day that passes, the surviving witnesses will have fewer memories of the events in question and some may die. Similarly, tangible items of evidence remain undiscovered and unsecured—evidence that

Plaintiff needs to prove Glenn Ford was denied his rights under the United States Constitution. This deprivation of rights literally took Glenn Ford's life from him.

## ARGUMENT

Before the Court are motions to stay discovery brought by Parish Defendants and Law Enforcement Defendants. Dckts. 136, 137. Defendants seek to have discovery stayed until the Court rules on their motions to dismiss. Dckt. 102, 104, 105, 134. Plaintiff asks that the Court exercise its discretion to deny the Motions to Stay because: (1) the issues raised in Defendants' Motions to Dismiss are largely fact based, not legal, so that a stay is not warranted; (2) ) the City of Shreveport is not a party to any motion to dismiss so discovery is warranted, at least as to claims that relate to it; and (3) the Law Enforcement Defendants' Motion to Dismiss is untimely in that Defendants have already answered the Complaint.

### Procedural Background

This is a case that cries out for discovery into why and how Glenn Ford was framed for a murder he did not commit and was locked away by himself for thirty years. Mindful of the precariousness of the ability to prove claims that date over thirty years, Plaintiff has consistently sought to begin discovery here.

Knowing that Glenn Ford was dying of cancer, he sought and was granted leave to complete his deposition. Dckt. 6, 33. Plaintiff also sought and was granted leave to conduct expedited discovery to obtain Glenn Ford's medical records. Dckt. 15, 27. While various motions to dismiss and Plaintiff's motion for leave to file an amended complaint were pending, Plaintiff sought leave for the parties to exchange

3

disclosures under FED. R. CIV. P. 26(a)(1). Dckt. 84. The Court did grant Plaintiff leave to amend the complaint, but denied the request to exchange initial disclosures. Dckt. 85, 89. Judge Hayes' order denying Plaintiff's motion to commence discovery was premised on the lack of good cause to modify the default timing sequences from FED. R. CIV. P. 16 and 26, not on any finding that discovery was otherwise improper.

On December 8, 2015, after all Defendants were served with process or agreed to waive service, Plaintiff asked Defendants for dates to conduct a Rule 26(f) conference. See attached Exhibit 1. On March 9, 2016, Plaintiff again asked Defendants for dates to conduct a Rule 26(f) conference. See attached Exhibit 2. On March 16, 2016—one day before a telephone conference was scheduled to take place—Law Enforcement Defendants filed an untimely motion to dismiss. Dckt. 134. The fact that the Motion was filed after Defendants had already answered (and on the eve of the Plaintiff's requested Rule 26(f)) conference), suggests that the motion was intended as a mechanism to put off needed discovery. Regardless, the parties did meet by telephone on March 22, 2016, but were not able to agree on any discovery schedule—Defendants took the position that discovery should be stayed, while Plaintiff took the position that discovery should proceed. See attached Exhibit 3.

## The Applicable Federal Rules

Under the Rules, discovery should proceed. Federal Rule of Civil Procedure 26(f) requires the parties to "confer as soon as practicable—and in any event at least

21 days before a scheduling conference is to be held or a scheduling order is due under Rule 16(b)" to begin working on a discovery schedule.  Federal Rule of Civil Procedure 16(b) authorizes the Court to issue a discovery scheduling order either "after receiving the parties' report under Rule 26(f)" or "after consulting with the parties' attorneys . . . at a scheduling conference." The scheduling order is to be issued within 90 days after any party has been served with the complaint or 60 days after any defendant appears (whichever is earlier).  *Id.*

At this point, the parties are beyond the timeframe to convene the Rule 26(f) conference. The Rule 26(f) conference will aid in disposing of this case—it requires the parties to "consider the nature and basis of their claims and defenses;" "the possibilities for promptly settling or resolving the case;" arranging for Rule 26(a)(1) disclosures; "discuss any issues about preserving discoverable information;" and "develop a proposed discovery plan." FED. R. CIV. P. 26(f).

### A. Defendants' Motions to Dismiss are Premised on Factual Assertions and Plaintiff is Entitled to Discovery on those Issues.

Plaintiff does not dispute that this Court has the discretion to approve Defendants' request to stay discovery here. A trial court has broad discretion to decide when discovery commences. *Petrus v. Bowen*, 833 F.2d 581, 583 (5th Cir. 1987).  But Plaintiff respectfully asserts that the discretion does not mean that Defendants are automatically entitled to a stay pending decision on their motions to dismiss.  If that were the case, then the Federal Rules of Civil Procedure would expressly provide for an automatic stay under Rule 12.  Plaintiff argues that the interests of judgment weigh heavily in favor of allowing discovery to commence.

5

Among other things, witnesses and even some of the parties are aging, and Plaintiff would be severely prejudiced in the presentation of her case if she were denied, by health concerns or death, the opportunity to take evidence—through depositions and other discovery requests—from these witnesses and parties.

The Fifth Circuit has stated that staying discovery pending motions to dismiss under Rule 12(b)(6) is more appropriate for those motions premised on legal, not factual issues. *Smith v. Potter,* 400 Fed.Appx. 806, 813 (5th Cir. 2010). This makes sense, as a Rule 12(b)(6) motion to dismiss focuses on the adequacy of the pleadings. FED. R. CIV. P. 12(b)(6); *Shaver v. Barrett Daffin Frappier Turner & Engel, L.L.P.,* 593 Fed.Appx. 26, 274 (5th Cir. 2014). To put it another way, a stay of discovery is not appropriate when it could prevent a party from having the opportunity to develop facts to defend against a dispositive motion. *Hope Medical Group for Women v. LeBlanc*, 2007 WL 1235445 at *3 (E.D. La 2007); *Parish of Jefferson v. Southern Recovery Management, Inc.,* 1996 WL 144400 at *2 (E.D. La. 1996) (citations omitted).

As noted in Plaintiff's responses to the pending Motions to Dismiss, Defendants have broadly attacked the factual sufficiency of Plaintiff's Complaint. Plaintiff incorporates the responses to the pending Motions to Dismiss herein. See Dckt. 118, pp. 16-18, 36-38; 40-48; Dckt.140 pp. 7-10. Because Defendants' motions to dismiss are premised in large part on factual attacks of Plaintiff's claims, a stay is not appropriate here.

6

B. **Defendant City of Shreveport did not File a Motion to Dismiss so Discovery Should Proceed at Least as to its Employees.**

Defendant City of Shreveport has not filed a motion to dismiss. Plaintiff claims that the City of Shreveport is liable under a *Monell* theory. Under that theory, the City of Shreveport can be held liable if its policies or customs caused the constitutional violations of its employees that Plaintiff complains of, regardless of the extent of the individual Defendants' liability:

> Local governing bodies, therefore, can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where, as here, the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers. Moreover, although the touchstone of the § 1983 action against a government body is an allegation that official policy is responsible for a deprivation of rights protected by the Constitution, local governments, like every other § 1983 "person," by the very terms of the statute, may be sued for constitutional deprivations visited pursuant to governmental "custom" even though such a custom has not received formal approval through the body's official decision-making channels.

*Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 690-691 (1978). In fact, the City of Shreveport's liability is in some ways broader, because it cannot assert qualified immunity. *Board of County Com'rs of Bryan County, Okl. v. Brown* 520 U.S. 397, 436 (1997).

Of course, to establish liability under *Monell*, Plaintiff will have to show an underlying constitutional violation. *Kitchen v. Dallas County, Tex,* 759 F.3d 468, 483 (5th Cir. 2014). But it is not necessary that Plaintiff identify the exact perpetrator of that violation to extend liability to the municipality. *Id.* at 480 (allowing claims to proceed against individual defendants under a bystander

7

liability theory even though Plaintiff could not identify the specific defendants who committed excessive force). Nor does Plaintiff even have to have a viable claim against the perpetrator of the constitutional violation in order to proceed against the government entity under a *Monell* theory. *Johnson v. Louisiana,* U2010 WL 996475 (W.D. La 2010) (finding that even though individual prosecutor was protected from suit by absolute immunity, claim could proceed against District Attorney's office under a *Monell* theory). *Monell* liability may flow from (1) implementation of an official policy; (2) the misconduct of a policymaker; or (3) widespread practices which, although not authorized by officially adopted and promulgated policy, are so common and well settled as to constitute a custom that fairly represents policy. *Burge v. St. Tammany Parish*, 336 F.3d 363, 369 (5th Cir. 2003).

  Even if Law Enforcement Defendants prevailed on their Motion to Dismiss, which Plaintiff does not anticipate, Plaintiff could still prove constitutional violations by City of Shreveport police officers and proceed against the City of Shreveport under *Monell*. Since the vast bulk of Plaintiff's claims go to Shreveport police officers, the unchallenged *Monell* claims against Shreveport remain so that discovery is appropriate regardless of the pending Motions to Dismiss. Hence, any claim of judicial economy in Defendants' Motions to Stay is hollow.  Plaintiff will need the exact same discovery to proceed against Shreveport that it would need to prove the constitutional violations against the individual police officers. There is no judicial economy that can be accomplished by the requested stay.

### C. Law Enforcement Defendants' Motion to Dismiss is Untimely and Should not be Considered

Plaintiff filed the First Amended Complaint on September 8, 2015. Dckt. 86. On December 3, 2015, the City of Shreveport and the Law Enforcement Defendants answered Plaintiff's Complaint. Dckt. 97.[1] Doc. No. 134. The Law Enforcement Defendants filed their Motion to Dismiss on the eve of the parties discussing the start of discovery. A Rule 12(b)(6) motion filed by a party who has already answered is untimely. Moreover, given the extensive factual disagreements, this is not an appropriate case for the Court to consider the motion under Rule 12(c). See Plaintiff's Response in Opposition to Motion to Dismiss, Dckt. 140 at pp. 2-4.

### CONCLUSION

The Federal Rules of Civil Procedure support allowing discovery to proceed in this case. Defendants' pending motions to dismiss do not support delaying discovery. First, the motions are premised on factual disputes, which do not support discovery stays. Moreover, there is no judicial economy argument because Plaintiff can proceed on almost all of the claims in the complaint against Defendant City of Shreveport, which has not filed a motion to dismiss. Finally, the Law Enforcement Defendants' Motion to Dismiss is untimely and does not support the last minute stay of discovery. Dckt. 136, 137.

---

[1] Law Enforcement Defendants subsequently filed a motion to stay discovery, joined by Defendant City of Shreveport, in which they cite this pending motion to dismiss as a basis for their requested relief. *See* Doc. No. 137. Plaintiff intends to respond separately to those motions.

RESPECTFULLY SUBMITTED, BY:

/s/ Mummi Ibrahim
Mummi Ibrahim, Louisiana Bar No. 34200
Ibrahim & Associates, LLC
4164 Canal Street
New Orleans, LA 70119
(504) 327-5289
mibrahim@iandalaw.com

*Attorneys for Andrea Armstrong, as Executrix of the Estate of Glenn Ford*

/s/ Mark Loevy-Reyes
Mark Loevy-Reyes, Illinois Bar No. 06209841
Admitted to this Court *pro hac vice*
Jon Loevy (*pro hac vice*)
Arthur Loevy (*pro hac vice*)
Steven Art (*pro hac vice*)
Sam Heppell (*pro hac vice*)
LOEVY & LOEVY
312 N. May Street, Suite 100
Chicago, IL 60607
(312) 243-5900
mark@loevy.com

DATED:     April 7, 2016

## CERTIFICATE OF SERVICE

I, Mark Loevy-Reyes, an attorney, hereby certify that on April 7, 2016, I filed the foregoing PLAINTIFF'S COMBINED RESPONSE TO DEFENDANTS' MOTIONS TO STAY using the Court's CM/ECF system, which effected service on all counsel of record.

                                                  RESPECTFULLY SUBMITTED,

DATED:	April 7, 2016		/s/ Mark Loevy-Reyes