**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**SHREVEPORT DIVISION**

| | |
|---|---|
| GLENN FORD, ET AL. | CIVIL ACTION NO. 15-0544 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| CADDO PARISH, ET AL. | MAGISTRATE JUDGE KAREN HAYES |

**MEMORANDUM RULING**

Before this Court is Defendants, former District Attorney Paul Carmouche and current District Attorney James Stewart's Federal Rule of Civil Procedure 12(b)(6) Motion to Dismiss (Record Document 105) Plaintiff, Andrea Armstrong's ("Armstrong"), claims in her First Amended Complaint (Record Document 86) of federal constitutional violations under 42 U.S.C. § 1983 by the Caddo Parish District Attorney's Office through its prosecutors. Armstrong serves as the Executrix of the Estate of Glenn Ford ("Ford"). For the reasons which follow, the Defendants' Rule 12(b)(6) Motion to Dismiss is **GRANTED**.

**FACTUAL AND PROCEDURAL BACKGROUND[1]**

In 1984, Ford was convicted of first degree murder and sentenced to death November 5, 1983 for the armed robbery and murder of Isadore Rozeman. His conviction and sentence were affirmed on appeal. State v. Ford, 489 So.2d 1250 (La.1986); Record Document 86 at 23, ¶ 95. Throughout a thirteen year period, Ford sought post-conviction relief based on the alleged suppression of exculpatory evidence. Id. at 24, ¶ 97. However, on October 19, 2009, the state district court denied Ford's post-conviction relief and on

---

[1] In deciding a Rule 12(b)(6) Motion to Dismiss, a Court must take all of a plaintiff's factual allegations as true. See Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009). Thus, the facts contained in the "Factual and Procedural Background" section are not findings of fact by the Court, but rather are facts pleaded in Armstrong's Amended Complaint that the Court must take as true at this preliminary stage.

February 4, 2011, the Louisiana Supreme Court affirmed the lower court's decision. See id. at 25, ¶ 102. In late 2013, the Caddo Parish District Attorney's Office stated that it had obtained credible evidence that Ford "was neither present at, nor a participant in, the robbery and murder of Isadore Rozeman," and filed a motion to vacate Ford's conviction and sentence. Id. at 25-26, ¶ 103. On March 10, 2014, the trial court granted the State's motion. Id. Ford was released the following day after spending nearly thirty years on death row. See id. at 26, ¶ 106. On June 10, 2014, the State dropped all charges against Ford. Id. at ¶ 107

On March 9, 2015, Ford filed suit under 42 U.S.C. § 1983 and amended his complaint September 8, 2015, naming as Defendants the City of Shreveport, several now-retired or deceased members of the Shreveport Police Department ("Law Enforcement Defendants"), Paul Carmouche ("Carmouche"), the former District Attorney of Caddo Parish at the time of Ford's arrest and conviction, Dale Cox[2] ("Cox"), in his official capacity as the current District Attorney for Caddo Parish, George McCormick ("McCormick"), who testified in the Ford trial as an expert forensic pathologist and at the time of trial, was the then recently elected Coroner of Caddo Parish, Caddo Parish, the alleged employer of McCormick, and ABC Insurance Companies, unknown insurance companies. See id. at 4-6, ¶¶ 11-19. During the time of the filing of the initial Complaint and the Amended Complaint, Ford passed away. Armstrong as the Executrix of the Estate of Glenn Ford was substituted in his place. See Record Document 83.

---

[2] James Stewart is now the District Attorney of Caddo Parish; thus, the claim against Dale Cox in his official capacity was in error. This error has been corrected.

Armstrong's Amended Complaint alleges violations of Ford's Fourth, Fifth, Sixth, and Fourteenth Amendment rights. The Amended Complaint contains at least eighteen allegations concerning the manufacturing and suppressing of evidence by Law Enforcement Defendants. See Record Document 86 at 9-14. In summary, Armstrong alleges that multiple police reports were buried by Law Enforcement Defendants that would have implicated other suspects and potentially exonerated Ford, the Law Enforcement Defendants suppressed a report that one of the Robinson brothers, a potential suspect to the Rozeman murder, had the murder weapon at a relative's house, and finally, the Law Enforcement Defendants manufactured witness evidence against Ford in an effort to frame him.

Armstrong's Amended Complaint, in the alternative to her claims against other Defendants involved in this action, alleges Monell claims against the Caddo Parish District Attorney's Office. Specifically, Armstrong alleges that "employees and representatives of the Caddo Parish District Attorney's Office knew of some or all of the exculpatory evidence described in this complaint. Instead of turning that evidence over to Mr. Ford and his defense attorneys prior to Mr. Ford's criminal proceedings, those employees and representatives of the Caddo Parish District Attorney's Office suppressed the evidence, acting pursuant to the policies and practices of the Caddo Parish District Attorney's Office, which deprived Mr. Ford of his rights under the United States Constitution and Louisiana law." Id. at 3, ¶ 7. However, due to the magnitude of the allegations regarding the suppression and manufacturing of evidence by the Law Enforcement Defendants, the Court finds it unnecessary to detail each allegation for purposes of analyzing Armstrong's Monell claims.

As the Court indicated in an earlier Order (Record Document 133), the Caddo Parish District Attorney's Office cannot be sued under Louisiana law. See Hudson v. City of New Orleans, 174 F.3d 677, 680 (5th Cir. 1999) ("Louisiana law does not permit a district attorney's office to be sued in its own name."). Thus, when attempting to sue a Louisiana district attorney's office, the current district attorney must be named in the suit, which has occurred in the present action. In suing Stewart in his official capacity, Armstrong is seeking to hold the District Attorney's Office (through its former District Attorney and Assistant District Attorneys) responsible under a theory of Monell liability. See Kentucky v. Graham, 473 U.S. 159, 166, 105 S. Ct. 3099, 3105 (1985) ("A suit against a public official in his official capacity is not a suit against the official personally," but is "to be treated as a suit against the entity."). Bringing Monell claims against Stewart and Carmouche in their official capacities is simply "another way of pleading an action against an entity of which an officer is or was an agent." Kentucky, 473 U.S. at 166, 105 S. Ct. at 3105. In this case, Carmouche's actions as the former District Attorney at the time of Ford's prosecution and conviction are imputed to the Caddo Parish District Attorney's Office via current District Attorney Stewart for the purpose of analyzing Armstrong's Monell claims.

After reviewing Armstrong's Amended Complaint and her Opposition to Defendants' Motion to Dismiss, Armstrong is attempting to hold the Caddo Parish District Attorney's Office liable through its agents by alleging six theories of Monell liability:

(1) the actions of final policymakers violated Ford's constitutional rights;

(2) the existence of a written, official policy of the Caddo Parish District Attorney to suppress, destroy, and fabricate evidence;

(3) Brady evidence in Ford's case was destroyed, suppressed, and fabricated pursuant to widespread customs and practices of the Caddo Parish District Attorney, which were so well-settled to constitute de facto policies, and the District Attorney was deliberately indifferent to these wrongs;

(4) the District Attorney and his policymakers were deliberately indifferent to these customs and practices, which was demonstrated by a failure to supervise;

(5) the District Attorney and his policymakers were deliberately indifferent to these customs and practices, which was demonstrated by a failure to adequately discipline prosecutors; and

(6) the District Attorney and his policymakers were deliberately indifferent to these customs and practices, which was demonstrated by a failure to adequately train prosecutors.

See Record Document 118 at 52-55.

## LAW AND ANALYSIS

**I.    Pleading Standards and the Rule 12(b)(6) Standard**

Rule 8(a)(2) of the Federal Rules of Civil Procedure governs the requirements for pleadings that state a claim for relief, requiring that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The standard for the adequacy of complaints under Rule 8(a)(2) is now a "plausibility" standard found in Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955 (2007), and its progeny. Under this standard, "factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Id. at 555-56, 127 S. Ct. at 1965. If a pleading only contains "labels and conclusions" and "a formulaic recitation of the elements of a cause of action," the pleading does not meet the standards of Rule 8(a)(2). Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009) (citation omitted).

Federal Rule of Civil Procedure 12(b)(6) allows parties to seek dismissal of a party's pleading for failure to state a claim upon which relief may be granted. In deciding a Rule 12(b)(6) motion to dismiss, a court generally "may not go outside the pleadings." Colle v. Brazos Cty., Tex., 981 F.2d 237, 243 (5th Cir. 1993). However, a court may also rely upon "documents incorporated into the complaint by reference and matters of which a court may take judicial notice" in deciding a motion to dismiss. Dorsey v. Portfolio Equities, Inc., 540 F.3d 333, 338 (5th Cir. 2008); see Fed. R. Evid. 201. Additionally, courts must accept all allegations in a complaint as true. See Iqbal, 556 U.S. at 678, 129 S. Ct. at 1949. However, "the complaint must contain either direct allegations on every material point necessary to sustain a recovery ... or contain allegations from which an inference fairly may be drawn that evidence on these material points will be introduced at trial." Campbell v. City of San Antonio, 43 F.3d 973, 975 (5th Cir. 1995) (citation omitted). Moreover, "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." Id. at 975, (quoting Fernandez–Montes v. Allied Pilots Ass'n, 987 F.2d 278, 284 (5th Cir.1993)). Courts considering a motion to dismiss under Rule 12(b)(6) are only obligated to allow those complaints that are facially plausible under the Iqbal and Twombly standard to survive such a motion. See id. at 678-79, 129 S. Ct. at 1949. If the complaint does not meet this standard, it can be dismissed for failure to state a claim upon which relief can be granted. See id. Such a dismissal ends the case "at the point of minimum expenditure of time and money by the parties and the court." Twombly, 550 U.S. at 558, 127 S. Ct. at 1966.

Armstrong's argument in her Opposition to the Defendants' Motion to Dismiss that federal courts apply a low bar with regard to Monell claims at the motion to dismiss stage

first needs to be addressed. See Record Document 118 at 39. It is true that in Leatherman v. Tarrant Cty. Narcotics Intelligence and Coordination Unit, the Supreme Court held that federal courts may not impose a heightened pleading requirement for Section 1983 municipal liability claims. 507 U.S. 163, 165, 113 S. Ct. 1160, 1162 (1993). In other words, the Leatherman decision meant that the "notice pleading" standard promulgated in the Federal Rules of Civil Procedure applied to Section 1983 municipal liability claims. However, in Ashcroft v. Iqbal, the Supreme Court held that the plausibility pleading standard established in Bell Atlantic Corp. v. Twombly applied to all federal court civil pleadings, thus encompassing complaints filed under Section 1983 alleging municipal liability. Iqbal, 556 U.S. at 678-79, 129 S. Ct. at 1949. Accordingly, courts considering a motion to dismiss under Rule 12(b)(6) are only obligated to allow those complaints that are facially plausible under the Iqbal and Twombly standard to survive such a motion. See id. at 678-79, 129 S. Ct. at 1949.

**II.     Section 1983/Monell Claims Against Stewart**

Under 42 U.S.C. § 1983, a plaintiff may file suit against a person acting under color of state law who has allegedly violated the plaintiff's constitutional rights. Section 1983 also allows for suits against local government entities themselves. In Monell v. Dept. of Social Serv., 436 U.S. 658, 98 S. Ct. 2018 (1978), the Supreme Court held that municipalities and local government agencies cannot be held liable for constitutional torts under Section 1983 under a theory of respondeat superior, but they can be held liable "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." Id. at 691, 694, 98 S. Ct. at 2036–38. In other words, merely establishing a

constitutional violation by an employee of a local government entity is not enough to impose liability upon that entity under Section 1983.

Rather, to succeed on a Monell claim against a local government entity, the plaintiff must establish (1) an official policy or custom, of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose "moving force" is that policy or custom. McGregory v. City of Jackson, 335 F. App'x 446, 448, 2009 WL 1833958, *2 (5th Cir. 2009), (citing Rivera v. Houston Indep. Sch. Dist., 349 F.3d 244, 247-49 (5th Cir. 2003)). Locating an "official policy" or "custom" ensures that a local government entity will be held liable only for violations of constitutional rights that resulted from the decisions of those officials whose acts may fairly be said to be those of the government entity itself. See Bryan Cty. Comm'rs v. Brown, 520 U.S. 397, 403-05, 117 S. Ct. 1382, 1388 (1997).

### A. A Policymaker

In order to succeed on a Monell theory of liability, "the unconstitutional conduct must be directly attributable to the municipality through some sort of official action or imprimatur; isolated unconstitutional actions by municipal employees will almost never trigger liability." Piotrowski v. City of Houston, 237 F.3d at 567, 578 (5th Cir. 2001). Therefore, plaintiffs must point to more than the actions of municipal employees, they must also "identify a policymaker with final policymaking authority and a policy that is the 'moving force' behind the alleged constitutional violation." Rivera v. Houston Indep. Sch. Dist., 349 F.3d 244, 247 (5th Cir. 2003). Federal courts must look to state law to determine whether the defendant had final policymaking authority. St. Louis v. Praprotnik, 485 U.S. 112, 124, 108 S. Ct. 915, 924 (1988) ("the identification of policymaking officials is a

question of state law"). Thus, the Court must look to the structure of Louisiana's local government to determine whether Carmouche was the policymaker with final policymaking authority for the Caddo Parish District Attorney's Office. Under state law, a district attorney "shall have charge of every criminal prosecution by the state in his district, be the representative of the state before the grand jury in his district, and be the legal advisor to the grand jury." La. Const. Art. V, § 26; see also La. Rev. Stat. § 16:1. Accordingly, Carmouche was the policymaker with final policymaking authority for the Caddo Parish District Attorney's Office at the time of Ford's arrest and conviction. See Burge v. Par. of St. Tammany, 187 F.3d 452, 469 (5th Cir. 1999) ("under the Louisiana Constitution and laws, a district attorney, like a sheriff, is virtually an autonomous local government official").

### B. An "Official Policy"

Now that Carmouche has been identified at the relevant time as the final policymaker of the Caddo Parish District Attorney's Office, Armstrong must plead sufficient facts to establish the existence of an "official policy." An "official policy" may be established in one of three ways: (1) "when the appropriate officer or entity promulgates a generally applicable statement of policy and the subsequent act complained of is simply an implementation of that policy; (2) where no rule has been announced as 'policy' but federal law has been violated by an act of the policymaker itself; and (3) even where the policymaker has failed to act affirmatively at all, so long as the need to take some action to control the agents of the government 'is so obvious, and the inadequacy [of existing practice] so likely to result in the violation of constitutional rights, that the policymaker . . . can reasonably be said to have been deliberately indifferent to the need.'" Bd. of Cty.

Comm'rs of Bryan Cty., Okl. v. Brown, 520 U.S. 397, 417-19, 117 S. Ct. 1382, 1395 (1997) (Souter, J., dissenting), (quoting City of Canton v. Harris, 489 U.S. 378, 390, 109 S. Ct. 1197, 1205 (1989)). Upon the Court's review of Armstrong's Amended Complaint and Memorandum in Opposition to Defendants' Motion to Dismiss, it appears Armstrong is attempting to establish an "official policy" by alleging the actions of the Caddo Parish District Attorney's Office fits within the previous three categories.

First, Ford has failed to sufficiently plead the existence of an official policy statement, ordinance, regulation, or decision that was promulgated or adopted by Carmouche as the final policymaker of the Caddo Parish District Attorney's Office. This falls under the first category where courts find the establishment of an "official policy" "when the appropriate officer or entity promulgates a generally applicable statement of policy and the subsequent act complained of is simply an implementation of that policy." Id. at 417, 117 S. Ct. at 1395. Ford has merely offered speculation that an official, written policy existed that directed prosecutors to suppress exculpatory evidence rather than specific factual allegations that an actual policy existed. Campbell v. City of San Antonio, 43 F.3d 973, 975 (5th Cir. 1995) ("the complaint must contain either direct allegations on every material point necessary to sustain a recovery ... or contain allegations from which an inference fairly may be drawn that evidence on these material points will be introduced at trial."). Accordingly, the Court rejects Armstrong's argument that an official, written policy existed that directed prosecutors within the Caddo Parish District Attorney's Office to suppress exculpatory evidence.

Next, Armstrong has alleged that Carmouche, as the final policymaker for the Caddo Parish District Attorney's Office, participated directly in the prosecution of Ford

and himself suppressed exculpatory evidence, which falls under the second category in order to establish the existence of an "official policy." Record Document 86 at 5 and 21, ¶¶ 13 and 81; Id. at 417-18, 117 S. Ct. at 1395 ("where no rule has been announced as 'policy' but federal law has been violated by an act of the policymaker itself"). However, Armstrong has failed to plead sufficient facts to establish that Carmouche himself suppressed exculpatory evidence and directly participated in the prosecution of Ford. Rather, Armstrong only offers speculation. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-56, 127 S. Ct. 1955, 1965 (2007) ("factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."). Accordingly, the Court rejects this argument.

Finally, in an attempt to establish an "official policy," Armstrong argues that Carmouche was deliberately indifferent to the need to train, supervise, and discipline his prosecutors. Thus, according to Armstrong, the Caddo Parish District Attorney's Office should be liable under a theory of Monell liability because it was clear that a policy existed within the Caddo Parish District Attorney's Office to withhold exculpatory evidence. Record Document 86 at 18, ¶ 78. Essentially, Armstrong is alleging Carmouche "failed to act" after having actual or constructive knowledge that the alleged constitutional violations were occurring. This allegation falls under the third category where courts will find the existence of an "official policy." Brown, 520 U.S. at 419, 117 S. Ct. at 1395 ("[E]ven where the policymaker has failed to act affirmatively at all, so long as the need to take some action to control the agents of the government 'is so obvious, and the inadequacy [of existing practice] so likely to result in the violation of constitutional rights, that the

policymaker . . . can reasonably be said to have been deliberately indifferent to the need.").

"In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of Section 1983." Connick v. Thompson, 563 U.S. 51, 61, 131 S. Ct. 1350, 1359 (2011). A claim by a plaintiff that alleges a failure to act includes a failure to supervise, train, and discipline. Snow v. City of El Paso, Texas, 501 F. Supp. 2d 826, 833 n. 5 (W.D. Tex. 2006) (recognizing that "[a]ll failure to act claims, such as plaintiff's failure to train, supervise, and discipline claims, involve the same basic elements: inadequacy, deliberate indifference, and causation"). In alleging Monell liability based on a failure to act, the operative pleading must allege: (1) inadequacy of identified procedures, (2) deliberate indifference in adopting identified policies, and (3) a direct causal link between the identified inadequate policy and alleged injuries. See Zarnow v. City of Wichita Falls, 614 F.3d 161, 170 (5th Cir. 2010).

Armstrong has failed to identify procedures within the Caddo Parish District Attorney's Office concerning training, supervising, and disciplining its prosecutors. Even if such procedures did in fact exist, Armstrong has failed to plead facts that establish why the procedures were inadequate. Armstrong's complaint contains "conclusory allegations or legal conclusions masquerading as factual conclusions," which will not suffice to prevent the Defendants' Motion to Dismiss. See Campbell v. City of San Antonio, 43 F.3d 973, 975 (5th Cir. 1995). However, assuming *arguendo* that Armstrong has identified inadequate procedures, Armstrong has failed to plead facts that would support the conclusion that Carmouche was deliberately indifferent to the inadequacy of those

procedures. The present action is very similar to the Supreme Court's decision in Connick v. Thompson, where the Court was tasked with examining a failure to train theory in order for the plaintiff to succeed with his Monell claim. 563 U.S. 51, 131 S. Ct. 1350 (2011). Connick involved a violation of the Brady v. Maryland, 373 U.S. 83, 83 S. Ct. 1194 (1963), requirement to disclose exculpatory evidence to a criminal defendant by prosecutors in Orleans Parish. 563 U.S. 51, 51, 131 S. Ct. 1350, 1353. The plaintiff in Connick argued that his claim against the Orleans Parish District Attorney's Office via District Attorney Connick was viable based on single-incident liability hypothesized in Canton v. Harris, 489 U.S. 378, 109 S. Ct. 1197 (1989). 563 U.S. at 63, 131 S. Ct. at 1361. Single-incident liability occurs in very limited circumstances as a result of a single constitutional violation committed by an employee. The Court rejected the plaintiff's argument and held that "failure to train prosecutors in their Brady obligations does not fall within the narrow range of Canton's hypothesized single-incident liability." Connick, 563 U.S. at 64, 131 S. Ct. at 1361. In coming to its decision, the Court reasoned that because attorneys already undergo rigorous training in the law both during law school and once they enter practice, "recurring constitutional violations are not the 'obvious consequence' of failing to provide prosecutors with formal in-house training about how to obey the law." Id. at 66, 131 S. Ct. at 1363. Therefore, because prosecutors are already familiar with the requirements of Brady through their training and experience, District Attorneys should not be deemed "deliberately indifferent" for failing to provide detailed training for every potential Brady situation that might arise. Id. In order to prove deliberate indifference for the purpose of establishing an "official policy," a plaintiff must allege a pattern of similar constitutional violations by untrained employees. Id. at 62, 131 S. Ct. at 1360. In attempting to advance

his claim of Monell liability against the district attorney, the plaintiff in Connick argued that ten years proceeding his armed robbery trial, Louisiana courts had overturned four convictions because of Brady violations by prosecutors in the Orleans District Attorney's Office. Id. Nonetheless, the Court held that those four reversals were not enough to put the district attorney on notice of the need for Brady training. Id.

Armstrong's argument regarding Carmouche's alleged failure to train, supervise, and discipline prosecutors is similar to the argument the Supreme Court rejected in Connick. Armstrong references nine cases in her Amended Complaint in an attempt to show a pattern of Brady violations in order to distinguish herself from the Supreme Court's decision and reasoning in Connick. However, the cases referenced in Armstrong's Amended Complaint do not show a pattern of Brady violations by prosecutors in the Caddo Parish District Attorney's Office necessary to establish the existence of an "official policy." In fact, no case referenced in Armstrong's Amended Complaint resulted in a court finding a Brady violation occurred. A court may rely upon "documents incorporated into the complaint by reference and matters of which a court may take judicial notice" in deciding a motion to dismiss." Dorsey v. Portfolio Equities, Inc., 540 F.3d 333, 338 (5th Cir. 2008); see Fed. R. Evid. 201. Armstrong attempts to survive this Motion to Dismiss by characterizing the facts and holdings of the cases referenced in a dubious manner. Armstrong argues that the purpose of referencing the nine cases was to support Ford's allegation of a systematic practice of evidence suppression by the Caddo Parish District Attorney's Office, which could potentially establish the existence of an "official policy" or "custom." See Record Document 118 at 45. However, Armstrong only affirms the Court's conclusion that the facts and outcomes of the cases referenced are mischaracterized by

arguing that the Court cannot look beyond the pleadings to examine the facts and holdings of each case. Therefore, Carmouche, as the District Attorney of Caddo Parish, could not have been put on notice of the need to train, supervise, and discipline his prosecutors. Accordingly, Armstrong has failed to establish the existence of an "official policy" under the third category for the purpose of succeeding in her Monell claim.

### C. An Alleged "Custom" of Suppressing Exculpatory Evidence

Armstrong also references the nine cases discussed supra in order to advance another theory of Monell liability for the purpose of surviving the present Motion to Dismiss. In order to establish the existence of a "custom" a plaintiff must show "[a] persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority." Webster v. City of Houston, 735 F.2d 838, 841 (5th Cir.). Accordingly, Armstrong is attempting to advance the argument that there was persistent, widespread practice of suppressing exculpatory evidence by the Caddo Parish District Attorney's Office, District Attorney Carmouche, and Assistant District Attorneys, which, although not authorized by officially adopted and promulgated policy, was so common and well settled as to constitute a custom that fairly represented municipal policy and Carmouche was deliberately indifferent to such policies. See Record Document 86 at 18, ¶ 78; see also Record Document 118 at 53. For the same reasons the Court rejected Armstrong's failure to train, supervise, and discipline argument in an attempt to establish an "official policy," the Court

rejects Armstrong's argument that a "custom" existed within the Caddo Parish District Attorney's Office to suppress exculpatory evidence. Therefore, the Court rejects Armstrong's contention that a "custom" existed with the Caddo Parish District Attorney's Office to suppress exculpatory evidence.

### D. A Constitutional Violation Whose "Moving Force" is that Policy or Custom

In order to establish "moving force" causation, "a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." Bd. of the County Comm'rs v. Brown, 520 U.S. 397, 404, 117 S. Ct. 1382, 1388 (1997). This requires that a plaintiff "demonstrate that a municipal decision reflects deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow the decision." Id. at 411, 117 S. Ct. at 1392. Proving "[d]eliberate indifference . . . is a stringent test and a showing of simple or even heightened negligence will not suffice." Piotrowski v. City of Houston, 237 F.3d 567, 579 (5th Cir. 2001) (quoting Brown, 520 U.S. at 407, 117 S. Ct. 1382, 1390).

Because the Court found that Armstrong has failed to establish the existence of an "official policy" or "custom" and causation has been discussed to some degree, supra, discussion of this element is unwarranted. Nonetheless, Ford has merely plead formulaic recitals of the elements needed to establish Monell liability rather than offer sufficient facts to support her contention that Carmouche was deliberately indifferent to the risk that his prosecutors were allegedly suppressing exculpatory evidence. Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009) (If a pleading only contains "labels and conclusions" and "a formulaic recitation of the elements of a cause of action," the pleading

does not meet the standards of Rule 8(a)(2).). Accordingly, the Defendants' Motion to Dismiss should be granted.

### III.    Federal Malicious Prosecution Claim

Count two of Armstrong's Amended Complaint contains a claim for federal malicious prosecution under 42 U.S.C. § 1983 against Law Enforcement Defendants, the City of Shreveport, McCormick, and Caddo Parish. See Record Document 86 at 29. Armstrong argues in her Memorandum in Opposition to Defendant's Motion to Dismiss that she is bringing a claim for malicious prosecution against the Defendants (Stewart and Carmouche). However, the Court finds that Armstrong has failed to state a claim in her Amended Complaint against Carmouche and Stewart for malicious prosecution. Even if Armstrong properly pled a claim against Stewart and Carmouche in their official capacities for malicious prosecution, this Circuit holds that a claim for malicious prosecution is not actionable under 42 U.S.C. § 1983. See Castellanos v. Fragozo, 352 F.3d 939, 942 (5th Cir. 2003). Therefore, the Court rejects any argument by Armstrong that supports a federal malicious prosecution claim against Carmouche and Stewart in their official capacities.

### IV.    Civil Conspiracy Claim

After reviewing Armstrong's Amended Complaint, it appears that she is possibly attempting to allege a civil conspiracy claim against the Defendants under 42 U.S.C. § 1985. See Record Document 86 at 41-45, ¶¶178-198. Therefore, out of an abundance of caution, Defendants contend that a claim for civil conspiracy cannot be brought against them based on the intracorporate conspiracy doctrine. "Under the intracorporate conspiracy doctrine, alleged concerted action by employees or officials of the same entity

or organization cannot constitute a conspiracy for purposes of Section 1985." Hilliard v. Ferguson, 30 F.3d 649, 653 (5th Cir. 1994). However, in her Memorandum in Opposition to Defendants' Motion to Dismiss, Armstrong states that "[p]laintiff's claim against DA Stewart is not a claim for civil conspiracy, and so DA Stewarts's invocation of the doctrine of intracorporate conspiracy is inapposite." Record Document 118 at 60. Accordingly, the Court rejects any claim of civil conspiracy against the Defendants.

## CONCLUSION

The Defendants' Rule 12(b)(6) Motion to Dismiss (Record Document 105) is **GRANTED.** All of Armstrong's Monell claims against Stewart and Carmouche in their official capacity are hereby **DISMISSED WITH PREJUDICE**. Such dismissal is inclusive of Armstrong's federal malicious prosecution and civil conspiracy claims as well.

An order consistent with the terms of the instant Memorandum Ruling shall issue herewith.

**THUS DONE AND SIGNED**, in Shreveport, Louisiana, on this the 6th day of December, 2017.

_____
S. MAURICE HICKS, JR., CHIEF JUDGE
UNITED STATES DISTRICT COURT