**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**SHREVEPORT DIVISION**

GLENN FORD, ET AL.                          CIVIL ACTION NO. 15-0544

VERSUS                                      JUDGE S. MAURICE HICKS, JR.

CADDO PARISH, ET AL.                        MAGISTRATE JUDGE KAREN HAYES

**MEMORANDUM RULING**

Before this Court is Defendant, the Estate of George McCormick's ("McCormick") Federal Rule of Civil Procedure 12(b)(6) Motion to Dismiss (Record Document 121) Plaintiff, Andrea Armstrong's ("Armstrong"), allegations in her First Amended Complaint (Record Document 86) of federal constitutional violations under 42 U.S.C. § 1983 by McCormick in his individual capacity. Armstrong serves as the Executrix of the Estate of Glenn Ford ("Ford"). For the reasons which follow, McCormick's Rule 12(b)(6) Motion to Dismiss is **GRANTED**.

**FACTUAL AND PROCEDURAL BACKGROUND[1]**

In 1984, Ford was convicted of first degree murder and sentenced to death November 5, 1983 for the armed robbery and murder of Isadore Rozeman. His conviction and sentence were affirmed on appeal. State v. Ford, 489 So.2d 1250 (La.1986); Record Document 86 at 23, ¶ 95. Throughout a thirteen year period, Ford sought post-conviction relief based on the alleged suppression of exculpatory evidence. Id. at 24, ¶ 97. However, on October 19, 2009, the state district court denied Ford's post-conviction relief and on

---

[1] In deciding a Rule 12(b)(6) Motion to Dismiss, a Court must take all of a plaintiff's factual allegations as true. See Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009). Thus, the facts contained in the "Factual and Procedural Background" section are not findings of fact by the Court, but rather are facts pleaded in Armstrong's Amended Complaint that the Court must take as true at this preliminary stage.

February 4, 2011, the Louisiana Supreme Court affirmed the lower court's decision. See id. at 25, ¶ 102. In late 2013, the Caddo Parish District Attorney's Office stated that it had obtained credible evidence that Ford "was neither present at, nor a participant in, the robbery and murder of Isadore Rozeman," and filed a motion to vacate Ford's conviction and sentence. Id. at 25-26, ¶ 103. On March 10, 2014, the trial court granted the State's motion. Id. Ford was released the following day after spending nearly thirty years on death row. See id. at 26, ¶ 106. On June 10, 2014, the State dropped all charges against Ford. Id. at ¶ 107

On March 9, 2015, Ford filed suit under 42 U.S.C. § 1983 and amended his complaint September 8, 2015, naming as Defendants the City of Shreveport, several now-retired or deceased members of the Shreveport Police Department ("Law Enforcement Defendants"), Paul Carmouche ("Carmouche"), the former District Attorney of Caddo Parish at the time of Ford's arrest and conviction, Dale Cox[2] ("Cox"), in his official capacity as the then current District Attorney for Caddo Parish, George McCormick ("McCormick"), who testified in the Ford trial as an expert forensic pathologist and was the Coroner of Caddo Parish, Caddo Parish, (the alleged employer of McCormick), and ABC Insurance Companies, unknown insurance companies. See id. at 4-6, ¶¶ 11-19. During the period of filing the initial Complaint and the Amended Complaint, Ford passed away. Armstrong as the Executrix of the Estate of Glenn Ford was substituted in his place. See Record Document 83.

---

[2] James Stewart is now the District Attorney of Caddo Parish; thus, the claim against Dale Cox in his official capacity was in error. This error has been corrected.

Armstrong's Amended Complaint alleges violations of Ford's Fourth, Fifth, Sixth, and Fourteenth Amendment rights. The Amended Complaint contains at least seventeen allegations concerning the manufacturing and suppression of evidence by Law Enforcement Defendants. See Record Document 86 at 9-14. As the Amended Complaint relates to McCormick, Armstrong alleges that McCormick, a self-described "public witness" and the Caddo Parish Coroner never examined the body of Rozeman, but testified as an expert forensic pathologist. Id. at 5 and 21, ¶¶ 17 and 85. At trial, McCormick delivered opinions for the prosecution on two crucial issues: (1) the gunman's dominant hand and (2) the victim's time of death. Id. Armstrong first contends that McCormick fabricated evidence that Rozeman was killed by a left-handed gunman. Id. at 21, ¶ 86. Armstrong alleges Ford was left handed and both the Robinson brothers, who Armstrong believes murdered Rozeman, were right-handed. Id. Thus, in agreement with the prosecution and Law Enforcement Defendants, McCormick testified that Rozeman was murdered by a left-handed gunman in order to frame Ford. See id. at 21 and 22, ¶¶ 86 and 90. Next, Armstrong argues that McCormick fabricated evidence that Rozeman was deceased longer than an hour and probably two or more hours before paramedics found the body at 3:30 p.m. Id. at 22, ¶ 87. In support of this contention, Armstrong alleges that Law Enforcement Defendants suppressed initial police reports that identified that Rozeman was alive at 2:30 p.m. based on a telephone call between Rozeman and Dr. Ebrahim. Id. at 12, ¶ 5. Armstrong argues that Ford had an alibi defense for the murder that happened after 2:30 p.m. and at trial, in order to rebut Ford's alibi, the State's time of death theory changed. Id. at 12, ¶ 55. At trial, prosecutors argued that the murder of Rozeman happened between 12:00 p.m. and 1:00 p.m. in an effort to disintegrate Ford's

alibi and find him guilty of the murder of Rozeman. Id. Furthermore, witnesses testified that Ford was near the scene of the crime at 1:00 p.m., therefore the time of death was "consistent with the time the [Ford] was at the scene of the crime." See id. at 13, ¶ 58, id. at 22, ¶ 87. According to Armstrong, the State directed McCormick to testify that Rozeman had been dead longer than an hour and probably two or more hours when paramedics found the body at 3:30 p.m. See id. at 22, ¶ 87. Essentially, Armstrong is alleging that the State directed McCormick's testimony in order to support the State's time of death theory, which in turn destroyed Ford's alibi defense and based on witness testimony placed him at the scene of the crime. According to Armstrong's allegations, this alleged fabricated testimony ultimately assisted the State in achieving the first degree murder conviction of Ford.

Armstrong alleges eight separate claims against McCormick in his individual capacity:

    1.) Violation of Due Process under 42 U.S.C. § 1983;

    2). Federal Malicious Prosecution Claim under 42 U.S.C. § 1983;[3]

    3). Failure to Intervene under 42 U.S.C. § 1983;

    4.) Conspiracy to Deprive Ford of his Constitutional Rights under 42 U.S.C. § 1983;

    5.) State Law Malicious Prosecution Claim;

    6.) Intentional Infliction of Emotional Distress;

    7.) Negligence under La. Civ. Code Art. 2315; and

---

[3] It should be noted that this Circuit holds that a claim for malicious prosecution is not actionable under 42 U.S.C. § 1983. See Castellanos v. Fragozo, 352 F.3d 939, 942 (5th Cir. 2003).

    8.) Violations of the Louisiana Constitution of 1974.

<u>See</u> Record Document 86 at 23-45.

## LAW AND ANALYSIS

**I.**   **Pleading Standards and the Rule 12(b)(6) Standard**

  Rule 8(a)(2) of the Federal Rules of Civil Procedure governs the requirements for pleadings that state a claim for relief, requiring that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The standard for the adequacy of complaints under Rule 8(a)(2) is now a "plausibility" standard found in <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 127 S. Ct. 1955 (2007), and its progeny. Under this standard, "factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." <u>Id.</u> at 555-56, 127 S. Ct. at 1965. If a pleading only contains "labels and conclusions" and "a formulaic recitation of the elements of a cause of action," the pleading does not meet the standards of Rule 8(a)(2). <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009) (citation omitted).

  Federal Rule of Civil Procedure 12(b)(6) allows parties to seek dismissal of a party's pleading for failure to state a claim upon which relief may be granted. In deciding a Rule 12(b)(6) motion to dismiss, a court generally "may not go outside the pleadings." <u>Colle v. Brazos Cty., Tex.</u>, 981 F.2d 237, 243 (5th Cir. 1993). However, a court may also rely upon "documents incorporated into the complaint by reference and matters of which a court may take judicial notice" in deciding a motion to dismiss. <u>Dorsey v. Portfolio Equities, Inc.</u>, 540 F.3d 333, 338 (5th Cir. 2008); <u>see</u> Fed. R. Evid. 201. Additionally, courts must accept all allegations in a complaint as true. <u>See Iqbal</u>, 556 U.S. at 678, 129

S. Ct. at 1949. However, "the complaint must contain either direct allegations on every material point necessary to sustain a recovery ... or contain allegations from which an inference fairly may be drawn that evidence on these material points will be introduced at trial." Campbell v. City of San Antonio, 43 F.3d 973, 975 (5th Cir. 1995) (citation omitted). Moreover, "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." Id. at 975, (quoting Fernandez–Montes v. Allied Pilots Ass'n, 987 F.2d 278, 284 (5th Cir.1993)). Courts considering a motion to dismiss under Rule 12(b)(6) are only obligated to allow those complaints that are facially plausible under the Iqbal and Twombly standard to survive such a motion. See id. at 678-79, 129 S. Ct. at 1949. If the complaint does not meet this standard, it can be dismissed for failure to state a claim upon which relief can be granted. See id. Such a dismissal ends the case "at the point of minimum expenditure of time and money by the parties and the court." Twombly, 550 U.S. at 558, 127 S. Ct. at 1966.

**II.    Absolute Witness Immunity as to Federal Claims Against McCormick**

All claims against McCormick in his individual capacity should be dismissed based on absolute witness immunity. "Absolute immunity is immunity from suit rather than simply a defense to liability, and is a threshold question 'to be resolved as early in the proceedings as possible.'" Hulsey v. Owens, 63 F.3d 654, 356 (5th Cir. 1995) (quoting Boyd v. Biggers, 31 F.3d 279, 284, (5th Cir. 1994)). In the seminal case concerning government officials, namely police officers, the Supreme Court was tasked with answering the question of whether 42 U.S.C. § 1983 authorizes a convicted person to assert a claim for damages against a police officer for giving perjured testimony at his trial. Briscoe v. Lahue, 460 U.S. 325, 326, 103 S. Ct. 1108, 1110 (1983). In Briscoe, the

plaintiff filed a Section 1983 action against the defendant, a member of the Bloomington, Indiana police force, alleging that the defendant violated his constitutional right to due process by committing perjury in the criminal proceeding, which led to the plaintiff's conviction. Id. at 326, 103 S. Ct. at 1111. The Seventh Circuit held that all witnesses (police officers and lay witnesses) are absolutely immune from civil liability based on their testimony in judicial proceedings. Id. at 328, 103 S. Ct. at 1111 (citing Briscoe v. LaHue, 663 F.2d 713, 721 (7th Cir. 1981)). The Supreme Court agreed with the Seventh Circuit's decision and held that police officers were entitled to absolute witness immunity based on trial testimony. See id. at 326, 103 S. Ct. at 1110. In coming to its decision, the Supreme Court reasoned that subjecting governmental officials to potential damages under Section 1983 would undermine not only the official's contribution to the judicial process, but the performance of their public duties. See id. at 342, 103 S. Ct. at 1119. Moreover, allowing such suits would potentially subject police officer witnesses to frequent lawsuits. See id. at 343, 103 S. Ct. at 1119. Therefore, judicial efficiency would not be advanced if the Court were to allow litigation against police officers based on alleged perjured testimony. See id., 103 S. Ct. at 1120. Accordingly, based on the Court's decision in Briscoe, absolute immunity applies equally to the testimony of private witnesses and law enforcement officials.

Moreover, in a case similar to the present one, the Fifth Circuit was tasked with determining whether forensic consultants, who were considered private individuals performing a governmental function, were entitled to qualified immunity for their actions pre-indictment. Brewer v. Hayne, 860 F.3d 819, 823 (5th Cir. 2017). In Brewer, the plaintiffs were convicted of separate murders. See id. at 820–21. Both of the plaintiffs'

convictions were vacated based on another party confessing to the crimes. Following the plaintiffs' vacated sentences, the plaintiffs sued Dr. Steven Hayne and Dr. Michael West asserting claims under 42 U.S.C. § 1983. The plaintiffs alleged that as forensic consultants/experts for the government, the doctors violated their constitutional rights under the Fourth and Fourteenth Amendments by providing investigators with and later testifying to baseless findings regarding the bite marks on the victims' bodies. Id. at 821. The district court held that the defendants were protected by absolute immunity for their testimony at trial and qualified immunity for their pre-trial reports. Id. On appeal, the Fifth Circuit did not address whether the doctors were absolutely immune from damages regarding their trial testimony as this precedent is clearly established law. See id. at 823. However, the Fifth Circuit did hold that as private individuals, the doctors were performing a governmental function and thus, entitled to qualified immunity. Id. at 824.

In the present action, McCormick testified as an expert in forensic pathology.[4] Record Document 86 at 5, ¶ 17. Armstrong alleges that McCormick delivered opinions for the prosecution on two crucial issues: (1) the gunman's dominant hand and (2) the victim's time of death. Id. at 21, ¶ 85. In an effort to support her claims against McCormick, Armstrong alleges that the opinions were fabricated. In other words, Armstrong argues that McCormick perjured himself in order to assist the State in obtaining a first degree murder conviction. However, as illustrated supra, McCormick is protected by absolute witness immunity for all trial testimony. See Briscoe, 460 U.S. at 328, 103 S. Ct. at 1111.

---

[4] It should be noted that McCormick, at the time he testified in the Ford trial, was the recently elected Coroner of Caddo Parish. However, the Court finds that McCormick was testifying in his individual capacity as an expert in forensic pathology. If Armstrong seeks to bring an official capacity claim against the Caddo Parish Coroner's Office, the proper Plaintiff would be Dr. Todd Thoma, the present coroner.

However, it appears Armstrong is attempting to place McCormick outside the realm of absolute witness immunity by arguing that McCormick participated in the alleged unlawful investigative process of Rozeman's death. See id. at 6, ¶ 17. In order to support the contention that McCormick took part in the unlawful investigative process, Armstrong includes McCormick in claims against the Law Enforcement Defendants and alleges that he along with the Law Enforcement Defendants "fabricated" evidence. See id. at 26-36. However, Armstrong has only offered conclusory allegations and speculation rather than facts that allege McCormick as a private individual was involved in the murder investigation of Rozeman pre-indictment. Campbell v. City of San Antonio, 43 F.3d 973, 975 (5th Cir. 1995) ("conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss."). In fact, there is not one allegation concerning McCormick in Section I under FACTUAL ALLEGATIONS, entitled "The Investigation of Isadore Rozeman's Murder" and Section II entitled "Law Enforcement Defendants Manufacture and Suppress Evidence In an Effort to Frame Mr. Ford." Record Document 86 at 7-14. Unlike the defendants in Brewer, who were engaged in the criminal investigations of the plaintiffs, Armstrong has failed to plead facts that show that McCormick was involved in the criminal investigation of Ford or plead sufficient facts detailing the existence of reports drafted by McCormick pre-indictment. Thus, unlike Brewer, a qualified immunity analysis is not warranted in the present action.

Therefore, the Court finds that Armstrong has failed to allege sufficient facts to show that McCormick took part in the investigation of Ford pre-indictment in order to defeat absolute immunity. The only factual allegations against McCormick relate to his

testimony at Ford's trial, which is protected by absolute witness immunity. Accordingly, all claims brought under 42 U.S.C. § 1983 are **DISMISSED WITH PREJUDICE**.

### III.     Absolute Witness Immunity as to State Law Claims Against McCormick

Armstrong alleges state law claims are for: (1) malicious prosecution, (2) intentional infliction of emotional distress, (3) negligence under La. Civ. Code Art. 2315, and (4) violations of the Louisiana Constitution. However, as mentioned supra, the claims against McCormick alleged by Armstrong concern McCormick's trial testimony. Like federal law, Louisiana state law recognizes witness immunity. "In general, witness immunity is an "absolute privilege" because the privilege protects the witness from civil suit regardless of malice or falsity." Marrogi v. Howard, 2001-1106 (La. 1/15/02), 805 So. 2d 1118, 1125. Therefore, McCormick is entitled to absolute witness immunity concerning the state law claims lodged against him by Armstrong for the same reasons mentioned in the previous section. Accordingly, the Court finds that Armstrong has failed to state a claim for which relief can be granted. Thus, all state law claims against McCormick should be **DISMISSED WITH PREJUDICE**.

### CONCLUSION

McCormick's Rule 12(b)(6) Motion to Dismiss (Record Document 121) is **GRANTED.** All of Armstrong's claims against McCormick in his individual capacity are hereby **DISMISSED WITH PREJUDICE** on the grounds of absolute immunity.

An order consistent with the terms of the instant Memorandum Ruling shall issue herewith.

**THUS DONE AND SIGNED**, in Shreveport, Louisiana, on this the 28th day of December, 2017.

_____
S. MAURICE HICKS, JR., CHIEF JUDGE
UNITED STATES DISTRICT COURT