UNITED STATES DISTRICT COURT
WESTERN DISTRCIT OF LOUISIANA
SHREVEPORT DIVISON

| | |
|---|---|
| ANDREA ARMSTRING as Executrix of the Estate of GLENN FORD | CIVIL ACTION NO. 15-0544 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| CITY OF SHREVEPORT, ET AL. | MAGISTRATE JUDGE MCCLUSKY |

**MEMORANDUM RULING**

Before the Court are two Motions for Judgment on the Pleadings, one filed by the City of Shreveport ("the City") (Record Document 215) and one by Defendants Gary Alderman, Don Ashley, Frank Datcher, Billy Lockwood, Glynn Mitchell, Gary Pittman, Rodney Price, and Everett T. Rushing ("the Law Enforcement Defendants") (Record Document 216). For the following reasons, the City's Motion (Record Document 215) is **GRANTED IN PART** and **DENIED IN PART** and the Motion by the Law Enforcement Defendants (Record Document 216) is **GRANTED**.

**FACTUAL AND PROCEDURAL BACKGROUND[1]**

The Court has previously recounted the lengthy factual history stemming from Glenn Ford's ("Ford") conviction in 1984 and ultimate release in 2014. In March 2015, Ford filed the instant suit under 42 U.S.C. § 1983 and various state law provisions alleging violations of his Fifth, Sixth, Eighth, and Fourteenth Amendment rights. Ford named as Defendants the City of Shreveport, several current and former Caddo Parish District Attorneys, forensic experts who testified during his trial, Caddo Parish, and multiple insurance companies. Additionally, Ford included Defendants Don Ashley, Gary

---

[1] As with a Rule 12(b)(6) Motion to Dismiss, the Court must accept all factual allegations as true. See St. Paul Ins. Co. v. AFIA Worldwide Ins. Co., 937 F.2d 274, 279 (5th Cir. 1991). The facts set forth in the factual background shall not be taken as binding factual finding made by the Court.

1

Alderman, Gary Pittman, Everett Rushing, Billy Lockwood, Frank Datcher, Glynn Mitchell, and Rodney Price, all of whom were the Shreveport Police Officers and detectives responsible for the investigation and arrest of Ford. Before filing the Amended Complaint (Record Document 86), Ford died. Andrea Armstrong ("Armstrong") serves as Executrix of the Estate of Glenn Ford and maintains the suit on behalf of the estate.

After extensive motion practice, Ford's initial list of defendants has narrowed to the City of Shreveport and the Law Enforcement Defendants. Armstrong maintains Ford's claims that the Law Enforcement Defendants conspired together to manufacture, suppress, and destroy evidence in violation of Ford's Fifth, Sixth, Eighth, and Fourteenth Amendment rights in addition to his direct and vicarious liability claims against the City. On April 15, 2019, the Law Enforcement Defendants and the City of Shreveport filed individual Motions for Judgment on the Pleadings (Record Documents 194 and 196). The Court, however, determined that the assertions made by Armstrong against the Law Enforcement Defendants in the Amended Complaint failed to meet the pleading standard. The Court instructed Armstrong to file a reply under Federal Rule of Civil Procedure 7(a) tailored to "the assertion of qualified immunity and fairly engage its allegations." Record Document 206. The City and the Law Enforcement Defendants were permitted to refile their Motions following the Rule 7(a) Reply (Record Document 209). Given that the Reply has been filed, the Motions for Judgment on the Pleadings are now ripe for consideration.

## LAW AND ANALYSIS

### 1. Federal Rule of Civil Procedure 12(c)

A motion for judgment on the pleadings follows the same standard as a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). Central to the analysis is whether,

when viewing the facts in the light most favorable to the nonmovant, the complaint states a valid claim for relief. See Hughes v. The Tobacco Inst., Inc., 278 F.3d 417, 420 (5th Cir. 2001). As with a Rule 12(b)(6) motion, a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." F. R. C. P. 8(a)(2). "[F]actual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–56, 127 S. Ct. 1955, 1965 (2007).

"Pleadings should be construed liberally, and judgment on the pleadings is appropriate only if there are no disputed issues of material fact and only questions of law remain." Brittan Commc'ns Int'l Corp. v. Sw. Bell Tel. Co., 313 F.3d 899, 904 (5th Cir. 2002). If a pleading only contains "labels and conclusions" and "a formulaic recitation of the elements of a cause of action," the pleading does not meet the standards of Rule 8(a)(2). Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009) (citation omitted).

Notably, Armstrong, in her pleadings, argues section 1983 claims must be analyzed under a less stringent standard than the traditional plausibility threshold. However, as this Court has previously stated, the case law relied upon by Armstrong is replaced by the later cases of Twombly and Ashcroft. As result, the Court will proceed to determine whether the claims survive the heightened standard applicable.

2. Analysis

    a. **Motion for Judgment on the Pleadings by the City of Shreveport**

Specifically, Armstrong's Amended Complaint, Rule 7(a) Reply, and Response to the City's Motion for Judgment on the Pleadings (Record Document 227) allege:

3

1. The destruction, withholding, fabrication, and solicitation of evidence implicating Ford in the crime was caused by the *de facto* policies, practices, and customs of the City of Shreveport.[2]

2. The malicious and wrongful prosecution of Ford without probable cause was caused by the *de facto* policies, practices, and customs of the City of Shreveport.

3. The conspiracy to frame Ford for the crime was caused by the *de facto* policies, practices, and customs of the City of Shreveport.

4. The widespread practices described above existed because the City failed to implement sufficient training and supervision of the Law Enforcement Defendants.

5. The City is liable for the misconduct of its agents under the state law theory of *respondeat superior* and is responsible for the indemnification of such agents for any tort judgment against them.

For her first three claims, Armstrong relies on 42 U.S.C. § 1983. Section 1983 permits suits against a person acting under color of state law who allegedly violated a constitutional right. The U.S. Supreme Court, in Monell v. Department of Social Services, 436 U.S. 658, 98 S.Ct. 2018 (1978), extended this cause of action to include actions against municipalities and local government agencies "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." 436 U.S. at 691, 694, 98 S.Ct. at 2036-2038. Generally, to succeed on a Monell claim, a plaintiff must establish 1) an official policy or custom, of which 2) a policymaker can be charged with actual or constructive knowledge, and 3) a constitutional violation whose "moving force" is that

---

[2] Armstrong treats the final policymakers, policies, and practices of the City and the Shreveport Police Department as "one and the same."

4

policy or custom. McGregory v. City of Jackson, 335 F.App'x 446, 448, 2009 WL 1833958, *2 (5th Cir. 2009), citing Rivera v. Houston Indep. Sch. Dist., 349 F.3d 244, 247-49 (5th Cir. 2003).

The Court believes Armstrong falls short on the policymaker element of Monell. A plaintiff must "identify a policymaker with final policymaking authority…." Rivera, 349 F.3d at 247 (5th Cir. 2003). Courts look to state law to determine whether a named defendant has final policymaking authority. See St. Louis v. Praprotnik, 485 U.S. 112, 124, 108 S.Ct. 915, 924 (1988). Louisiana law states, "[t]he superintendent of police or commanding officer of the department may adopt regulations for the government of the department except substitutes." La. R.S. 33:2196. As clearly explained by the statute, the superintendent of police or the commanding officer, in this case, the Shreveport Chief of Police, is the official policymaking authority over the actions of the Law Enforcement Defendants, not the City of Shreveport. Here, Armstrong asserts that the constitutional violations carried out by the Law Enforcement Defendants are the result of deficient municipal policies, customs, and patterns of the City of Shreveport and its policymakers. No other details exist regarding the identity of the policymaker. Armstrong does not identify the chief of police in her Amended Complaint. In fact, she neglects to name any specific policymaker at all.

The Court further finds Armstrong's argument lacks evidence proving the constitutional violations occurred because of an existent "official policy" or "custom." Armstrong first attempts to hold the City liable for a custom or a "persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that

5

fairly represents municipal policy." Webster v. City of Houston, 735 F.2d 838, 841 (5th Cir. 1984). She alleges the policymakers of the City had actual or constructive knowledge of the custom of constitutional violations and they acted with deliberate indifference. See Record Document 86 at 15, ¶ 66. The City contends that Armstrong's argument is a conclusory allegation which fails to detail any specific policy for which the city can be liable. See Record Document 219-3. While Armstrong does provide a list of alleged patterned practices such as using impermissible coercive tactics, manufacturing evidence, and suppressing or destroying exculpatory evidence, she neglects to show that the City had actual or constructive knowledge of the custom. see Record Document 209. Without being aware of the practices alleged, the City cannot be said to act with deliberate indifference.

Armstrong also tries to establish the existence of a policy by arguing the City was deliberately indifferent to the need to train, supervise, and discipline the Law Enforcement Defendants. In other words, Armstrong seeks to prove there is an official policy "where the policymaker has failed to act affirmatively at all, so long as the need to take some action to control the agents of the government is 'so obvious, and the inadequacy [of existing practice] so likely to result in the violation of constitutional rights, that the policymaker…can reasonably be said to have been deliberately indifferent to the need." City of Canton v. Harris, 489 U.S. 378, 390, 109 S.Ct. 1197, 1205 (1989). To succeed on this theory, Armstrong's pleadings must provide evidence that "(1) the supervisor either failed to supervise or train the subordinate officer; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights[;] and (3) the failure to train or supervise amounts to deliberate indifference." Terrell v. Pichon, 413 F. Supp. 3d

515, 522 (E.D. La. 2019), aff'd, 795 F. App'x 935 (5th Cir. 2020) citing Davidson v. City of Stafford, Tex., 848 F.3d 384, 397 (5th Cir. 2017). What's more, to prove deliberate indifference, a plaintiff must allege a pattern of similar constitutional violations by untrained employees. See Connick v. Thompson, 563 U.S. 51, 62, 131 S.Ct. 1350, 1360 (2011).

This Court addressed a similar issue in a prior Motion to Dismiss filed by former Caddo Parish District Attorney, Paul Carmouche (Record Document 105). Armstrong's Amended Complaint listed nine different cases showing what she believed was a pattern of Brady violations, see Record Document 209, yet this Court found insufficient evidence that Carmouche was aware of and ignored the obvious deficiencies in the training of his assistant district attorneys. Here, Armstrong presents multiple instances where the City failed to train its employees in areas such as proper documentation and preservation of evidence, juvenile interviews, how to determine exculpatory evidence, and how to conduct proper identification procedures. See Record Document 209. Her assertions suggest inadequate training of the Law Enforcement Defendants by the City. But, as with her allegations of custom, Armstrong falls short in proving how the City was put on notice of its deficiencies. Unlike her argument against the Motion to Dismiss, Armstrong presently cites no repeated instances that make the City's need to act so obvious that it equates to deliberate indifference to the harm caused.  Because Armstrong's Amended Complaint and Rule 7(a) Reply do not identify the correct policymaker or explain how the City was made aware of the misconduct, the City's Motion for Judgment on the Pleadings is **GRANTED** as to both Monell claims.

Armstrong also brings claims of *respondeat superior* liability and indemnification against the City under Louisiana law. The question of indemnification is premature at this stage and the Motion for Judgment on the Pleadings is **DENIED** regarding that claim.

Looking to the state vicarious liability claim, under Louisiana Civil Code article 2320, "[m]asters and employers are answerable for the damage occasioned by their servants and overseers, in the exercise of the functions in which they are employed." La. C.C. art. 2320. However, responsibility only attaches when the employer might have prevented the act which caused the damage and has not taken preventative action. See id. Presuming Armstrong's allegations that the Law Enforcement Defendants committed constitutional violations in the course and scope of their employment with the City are true, she still provides no proof in her Amended Complaint or Rule 7(a) Reply that the City was ever aware of the alleged violations. Instead, she merely concludes that the many incidents of misconduct were "known to City policymakers." Record Document 209. This, without more, is not enough. The Court cannot determine liability if there is no real indication that the City knew of the misconduct, could have prevented it, but failed to act. What's more, the City cannot be vicariously liable for its employees if there is no underlying tortious conduct committed. See Cormier v. Lafayette City-Parish Consol. Govt., No. 11-31125, 2012 WL 4842272, at *5 (5th Cir. 10/12/12). As will be discussed *infra*, there is no misconduct by the Law Enforcement Defendants for which the City could be liable.

The City's Motion for Judgment on the Pleadings is **GRANTED** as to the state vicarious liability claim.

**b. Motion for Judgment on the Pleadings by the Law Enforcement Defendants**

At the outset, the Law Enforcement Defendants raise the defense of qualified immunity in addition to their arguments that Armstrong's allegations fall short of the plausibility pleading standard. Qualified immunity protects the Law Enforcement Defendants so long as their individual conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would be aware. See Saucier v. Katz, 533 U.S. 194, 201, 121 S.Ct. 2151, 2156 (2001). When a defense of qualified immunity is asserted by the defendant, the plaintiff bears the burden of proving such immunity is inapplicable to the defendant's conduct. See Waganfeald v. Gusman, 674 F.3d 475, 483 (5th Cir. 2012).

After thorough review of the pleadings, the Court finds Armstrong does not uphold her burden because she does not present plausible evidence proving that each of the Law Enforcement Defendants individually violated the constitutional rights of Ford. For reasons set forth below, the Motion for Judgment on the Pleadings by the Law Enforcement Defendants is **GRANTED**.

1. Civil Conspiracy among the Law Enforcement Defendants

The Court of Appeals for the Fifth Circuit has stated that in order to prove the existence of a civil conspiracy under section 1983, a plaintiff must allege facts that "establish 1) the existence of a conspiracy involving state action" as well as "2) a deprivation of civil rights in furtherance of the conspiracy by a party to the conspiracy." Shaw v. Villanueva, 918 F.3d 414, 419 (5th Cir. 2019), quoting Pfannstiel v. City of Marion, 918 F.2d 1178, 1187 (5th Cir. 1990). Central to Armstrong's case against the Law

9

Enforcement Defendants is her belief that the officers and detectives "reached an agreement among themselves to frame Plaintiff [Ford] for a crime he did not commit and thereby to deprive him of his constitutional rights…." Record Document 86 at 34, ¶ 141. In fact, each assertion of misconduct made by Armstrong against the Law Enforcement Defendants is contingent on the existence of this agreement to suppress, fabricate, or destroy evidence.

However, Armstrong's conspiracy claim flounders on two grounds. First, Armstrong still lacks specificity in her allegations. She begins numerous paragraphs by listing the individual names of all the Law Enforcement Defendants, but then proceeds to vaguely say "one or more Defendants," "agreed to" violate Ford's constitutional rights. Record Document 209 at ¶ 81, 91, 97, 110, 114, 118, 129, 143; see also Record Document 209 at ¶¶ 80, 90, 96, 109, 113, 117, 128, 142. Her recounting of the facts does not pinpoint who was chosen to commit the act of suppression or fabrication, who committed the act, or how that individual committed the act. Other than her blanket statement that the group agreed to do something, there are no other facts to reveal which Law Enforcement Defendant worked to implicate Ford. See Shaw, 918 F.3d at 419. The Court gave Armstrong a second chance to present her evidence more thoroughly, however, the Court finds the only difference between Armstrong's Amended Complaint and Rule 7(a) Reply is the fact that she individually lists the names of the officers instead of referring to them as a group. These "threadbare assertions fall short of the well-pleaded facts" that would allow this Court to reasonably infer that the officers conspired against Ford.

Even assuming *arguendo* that Armstrong has sufficiently established the existence of an agreement among the Law Enforcement Defendants, Armstrong's second hurdle is the intra-corporate conspiracy doctrine. When all defendants are members of the same collective entity, the conspiracy cannot involve two or more people, meaning a conspiracy cannot be established at all. See Reynosa v. Wood, 134 F.3d 369, * 2 (5th Cir. 1997). An entity cannot conspire with itself. See Angelle v. Town of Duson, No. 18-CV-00272, 2018 WL 469788, at *9 (W.D. La. 8/7/18), report and recommendation adopted, 2019 WL 4624114 (W.D. La. 9/26/18). Because all Law Enforcement Defendants are employees of a single entity, the Shreveport Police Department, there can exist no conspiracy among them. For these reasons, Armstrong's conspiracy claim is **DISMISSED** against all Law Enforcement Defendants.

> 2. Suppression of Evidence by Alderman, Ashley, Price, Datcher, Mitchell, Pittman, and Rushing[3]

Armstrong's claims that Defendants Alderman, Ashley, Price, Datcher, Mitchell, Pittman, and Rushing suppressed evidence face difficulties similar to her conspiracy claim.[4] Armstrong's Rule 7(a) Reply starts off by detailing the individual roles each Defendant played in the investigation and arrest of Ford. From her descriptions, the officers and detectives appear to have conducted by-the-book procedures. She then devolves into vague generalizations alleging that after recording the collected information, "one or more" of the Law Enforcement Defendants met, discussed, and agreed to suppress the information. Again, Armstrong provides no indication of who specifically

---

[3] The Court largely relies on the allegations contained in Armstrong's Rule 7(a) Reply because the Amended Complaint fails to give adequate details of each Defendants individual involvement.
[4] The Court will further discuss Defendant Lockwood's involvement below.

11

suppressed the evidence or who committed the constitutional wrong. Armstrong's pleadings lack detail where it matters most, and they cannot put on notice those Defendants she claims suppressed exculpatory evidence. For this reason, her allegations that Defendants Alderman, Ashley, Price, Datcher, Mitchell, Pittman, and Rushing suppressed evidence must be **DISMISSED**.

        3. <u>Evidence destruction, fabrication, and suppression by Lockwood</u>

Armstrong contends that Defendant Lockwood destroyed, fabricated and suppressed physical evidence. <u>See</u> Record Document 209 at 12. She relies on the U.S. Supreme Court's analysis in <u>Brady v. Maryland</u>, 373 U.S. 83 (1963), for all three claims. However, for her failure to preserve evidence claim, the Court looks to <u>Arizona v. Youngblood</u>, 488 U.S. 51 (1988), which instructs that there is a denial of a criminal defendant's due process right only where that defendant can prove the evidence was destroyed in bad faith. <u>See id.</u> at 58. Evaluating Armstrong's claim with this requirement, the Court does not believe she adequately proves that Defendant Lockwood acted in bad faith. Again, she details the steps Defendant Lockwood took in examining the paper bag and fingerprint, yet her only reference to Lockwood's state of mind is the bald, conclusory accusation that Lockwood's actions were "done in bad faith." Record Document 209 at 13. Without further exemplification of how Defendant Lockwood acted in bad faith, the Court finds the claim lacks legal significance.

The Court also believes Armstrong's fabricated evidence claim fails the plausibility standard.[5] To prove evidence was fabricated in violation of the Fourteenth Amendment,

---

[5] The Law Enforcement Defendants argue Defendant Lockwood has absolute immunity from his statements made while testifying in Ford's criminal trial. The Court agrees. <u>See</u> <u>Briscoe v. LaHue</u>, 460 U.S. 325, 345 (1983) (finding the common-law immunity for witnesses provides immunity to criminal trial witnesses from section 1983 suit regardless of the witness's capacity.). However, it is unclear from Armstrong's pleadings

12

a plaintiff must show the officer fabricated evidence for the purpose of falsely obtaining a charge and that the evidence influenced the decision to charge. See Cole I, 802 F.3d 752, 771 (5th Cir. 2015). Again, Armstrong leans on the existence of an agreement among the Law Enforcement Defendants to establish this requisite malintent to implicate Ford, but as previously explained, this allegation is not specific enough to create a reasonable inference that Defendant Lockwood fabricated evidence about the fingerprint with the intent of falsely obtaining a charge against Ford.

As for her assertion that Defendant Lockwood suppressed exculpatory information regarding the fingerprint evidence, she returns to her line that "one or more Defendants" were aware that three other suspects had whorl patterned fingerprints and deliberately kept this information from the prosecutors. Record Document 209 at 14. Without further detail as to whether Defendant Lockwood personally suppressed the information, the claim does not survive the Motion for Judgment on the Pleadings.

As result of her group allegations, Armstrong's claims of destruction, fabrication, and suppression of evidence are implausible against Defendant Lockwood. The claims against him are **DISMISSED**.

### 4. Fabrication of evidence by Defendants Ashley and Alderman

Armstrong asserts members of the Law Enforcement Defendants manufactured statements on behalf of Chandra Lisa Nash ("Nash") and more specifically that Defendants Alderman and Ashley fabricated information on behalf of Marvella Brown ("Brown") and Donnie Thomas ("Thomas").[6] She first argues that because the Law

---

which alleged fabricated statements were made by Lockwood at trial. For this reason, the Court also analyzes this claim under the plausibility standard.

[6] The Defendants, in their Motion, believe this to be a question for Brady analysis. As previously explained by the Court, all Brady claims by Armstrong do not meet the plausibility standard. Just as with the claim

13

Enforcement Defendants collectively suppressed a police report containing Nash's original testimony, "one or more" of the Law Enforcement Defendants were able to coerce Nash to change her testimony and use this new statement against Ford at his trial. Record Document 209 at 24. There is no indication of who coerced or convinced Nash to change her statement. The Court reiterates that this form of group allegation does not meet the pleading standard.

Armstrong also argues Defendants Ashley and Alderman fed Brown information which they then recorded and used against Ford at trial. See Record Document 209 at 34. She further explains that Brown recanted her prior statement and acknowledged that parts of the prior statement were fabricated by Defendants Ashley and Alderman. See id. Taking these facts as true, Armstrong appears to plead enough to form her claim for relief. However, Armstrong fails to point to how the alleged fabricated evidence influenced the decision to charge Ford. She claims the information was "used against Mr. Ford at his criminal trial," but otherwise gives no indication of whether the evidence inclined the prosecutors to charge Ford with second degree murder. As for Ashley and Alderman's involvement in Donnie Thomas's statements, Armstrong reverts to generalizations and conclusory accusations that his testimony was fabricated by police. With even fewer details than her argument for the fabrication of Brown's testimony, the Court finds this assertion implausible. The fabrication and coercion claims against the Law Enforcement Defendants are **DISMISSED**.

---

against Defendant Lockwood, Armstrong's allegations also require an assessment under the elements for evidence fabrication.

14

5. <u>Malicious Prosecution</u>

It is important to note that Armstrong brings claims of false prosecution against the Law Enforcement Defendants under both federal and state law. The Court of Appeals for the Fifth Circuit has refused to recognize a federal constitutional right to be free from malicious prosecution under section 1983. See <u>Castellano v. Fragozo</u>, 352 F.3d 939 (5th Cir. 2003). The federal malicious prosecution claim is **DISMISSED**.

A claim for malicious prosecution under Louisiana law requires "(1) the commencement or continuance of an original criminal or civil judicial proceeding; (2) its legal causation by the present defendant in the original proceeding; (3) its bona fide termination in favor of the present plaintiff; (4) the absence of probable cause for such proceeding; (5) the presence of malice therein; and (6) damage conforming to legal standards resulting to plaintiff." <u>Lemoine v. Wolfe</u>, 2014-1546 (La. 3/17/15), 168 So. 3d 362, 367.

Armstrong's claim runs aground at element two (2). As is discussed in the preceding paragraphs, there is little to no support that the Law Enforcement Defendants' alleged conduct caused Ford to have legal action commenced against him. Any attempt to draw the connection rests with Armstrong's assertion that the group of officers and detectives hatched a plan to implicate Ford for the crime. However, as the Court previously explained, Armstrong's presentation of this plan amounts to no more than a hunch that it even existed. A hunch does not equate to a reasonable inference. Without further proof that the Law Enforcement Defendants were the cause of the legal action taken against Ford, the state malicious prosecution claim must be **DISMISSED**.

6. <u>Failure to Intervene</u>

A plaintiff alleging that an officer failed to intervene must show that the defendant officer "(1) knows that a fellow officer is violating an individual's constitutional rights; (2) is present at the scene of the constitutional violation; (3) has a reasonable opportunity to prevent the harm; and (4) chooses not to act." Adams v. City of Shreveport, 15-CV-2637, 2018 WL 2944430 at *5 (W.D. La. 2018), quoting Whitley v. Hanna, 726 F.3d 631, 646 (5th Cir. 2013). Armstrong states the Defendants discussed the information gathered from their investigation then agreed collectively to violate Ford's constitutional rights. However, because the claim lacks detail as to which of the Defendants did what, whether any Defendant knew of the misconduct, or who was present at the commission of the misconduct. Armstrong's group pleading again fails to present a plausible claim. The failure to intervene must be **DISMISSED**.

7. Intentional Infliction of Emotional Distress under Louisiana law

To recover damages for intentional infliction of emotional distress under Louisiana law, a plaintiff must show "(1) the conduct of the defendant was extreme and outrageous, (2) the emotional distress suffered by the plaintiff was severe, and (3) the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his or her conduct." Quinlan v. Sugar-Gold, 51,191 (La. App. 2 Cir. 4/5/17), 219 So. 3d 1173, 1185. Conduct that is extreme and outrageous is that which is "so atrocious as to pass the boundaries of decency and to be utterly intolerable to civilized society." Johnson v. English, 34,322 at * 5 (La. App. 2 Cir. 12/20/00), 779 So.2d 876, 881.

Just as Armstrong insufficiently pleads that individual Law Enforcement Defendants violated a constitutional right, so too does her complaint lack indication that

any of the individual Law Enforcement Defendants acted with extreme and outrageous conduct. There also exists no proof of malintent or intention to cause severe emotional distress by any of the Law Enforcement Defendants. Her claim of intentional infliction of emotional distress must be **DISMISSED** for failure to meet the pleading standard.

### 8. Article 2315 Negligence

Louisiana employs the duty-risk formula to assess an individual's liability under article 2315 of the Louisiana Civil Code. The defendant must have a duty to conform his or her conduct to a specific standard of care, the defendant must fail to conform his or her conduct, the defendant's substandard conduct must be a cause-in-fact and a legal cause of the plaintiff's injuries, and the plaintiff must suffer actual damages. See Lawrence v. Sanders, 49,966 (La. App. 2 Cir. 6/24/15), 169 So. 3d 790, 795, writ denied, 2015-1450 (La. 10/23/15), 179 So. 3d 601.

Armstrong's pleadings do not provide enough evidence to prove that the Law Enforcement Defendants individually failed to meet the standard of care of a reasonable officer. While Armstrong expends numerous paragraphs detailing the steps by the Law Enforcement Defendants in their investigations, her descriptions become vague and unspecific when she tries to establish the alleged misconduct. Without a more thorough explanation of how these officers and detectives failed to act according to the standard of care, Armstrong's claims of negligence must be **DISMISSED**.

## **CONCLUSION**

For the foregoing reasons,

The Motion for Judgment on the Pleadings by the City of Shreveport (Record Document 215) is **GRANTED** as to the Monell and state vicarious liability claims. The City's Motion is **DENIED** regarding the indemnification claim.

The Motion for Judgment on the Pleadings by the Law Enforcement Defendants (Record Document 216) is **GRANTED** as to all claims.

An order consistent with the terms of the instant Memorandum Ruling shall issue herewith.

**THUS DONE AND SIGNED** in Shreveport, Louisiana, this 1st day of April, 2021.

_____
S. MAURICE HICKS, JR., CHIEF JUDGE
UNITED STATES DISTRICT COURT